UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELIAS ZEDAN,

    Plaintiff,

v.

SGL NO. 1 LIMITED,

    Defendant.
_____/

Case No. 20-cv-10680
Hon. Matthew F. Leitman

### ORDER (1) GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS (ECF No. 18) AND (2) DENYING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS (ECF No. 14)

In 2019, Plaintiff Elias Zedan had renovation work performed on a building that he owns in Detroit, Michigan. The renovation work caused a fire that damaged the building. Zedan sought insurance coverage for the fire losses from his insurer, Defendant SGL No. 1 Limited ("SGL"). SGL denied coverage on the ground that Zedan's insurance policy excluded coverage for losses that arose out of renovation work (the "Renovation Exclusion"). In this action, Zedan claims that SGL breached the terms of his policy and violated Michigan law when it denied coverage for the fire damage. (*See* Am. Compl., ECF No. 8.) The parties have now filed cross-motions for judgment on the pleadings. (*See* Zedan Mot., ECF No. 14; SGL Mot., ECF No. 18.) For the reasons explained below, the Court agrees with SGL that the

1

Renovation Exclusion precludes coverage for the fire damage. Accordingly, the Court **GRANTS** SGL's motion and **DENIES** Zedan's motion.

**I**

Zedan is the owner of a "two story, brick building" located in Detroit, Michigan (the "Property"). (Am. Compl. at ¶1, ECF No. 8, PageID.157.) In April 2019, Zedan purchased an insurance policy for the Property from SGL (the "Policy").[1] (*See* Policy, attached to Zedan's Amended Complaint, ECF No. 8-1.) The Policy provides $300,000 in coverage for "Covered Causes of Loss." (*Id.*, PageID.166, 212.) "[L]oss from fire" is one of the "Covered Causes of Loss" under the Policy. (*Id.*, PageID.212; *see also* Am. Compl. at ¶6, ECF No. 8, PageID.159.)

In July 2019, Zedan hired non-party James J. Leamon Landscape Design and Construction, Inc. ("Leamon") to perform renovation work at the Property. (*See* Am. Compl. at ¶9, ECF No. 8, PageID.159.) On July 3, 2019, Leamon was using a welding torch to perform a portion of the renovation work, and the torch started a fire. (*See id.* at ¶¶ 12, 17, PageID.159.) The fire caused substantial damage to the Property. (*See id.* at ¶15, PageID.159.)

---

[1] Zedan's insurance policy was purchased through Lloyd's of London, an insurance carrier in the United Kingdom. "SGL[] is one of the capital providers or 'Names' for Lloyd's of London Syndicate 609, the sole Lloyd's syndicate subscribing to [Zedan's insurance policy]." (Am. Compl. at ¶2, ECF No. 8, PageID.157.) For ease of reference, the Court will refer to Zedan's insurer as 'SGL."

Zedan sought insurance coverage from SGL for the damage to the Property that was caused by the fire. (*See id.* at ¶16, PageID.159.) SGL denied coverage on the ground that the fire was caused by renovation work, and the Renovation Exclusion precluded coverage for losses arising out of such work. (*See id.* at ¶18, PageID.160.) The Renovation Exclusion provides, in relevant part that:

> It is understood and agreed that no coverage is available for any loss or damage directly or indirectly arising out of or relating to any renovation or construction work being performed at or upon the insured premises during the period of this policy.

(Policy, ECF No. 8-1, PageID.225.)

## II

Zedan filed this action on March 12, 2020. (*See* Compl., ECF No. 1; Am. Compl., ECF No. 8.) Zedan alleges that SGL breached the terms of the Policy when it denied his insurance claim based on the Renovation Exclusion. (*See* Am. Compl. at ¶¶ 20-29, ECF No. 8, PageID.160-161.) He also asserts that SGL violated the Michigan Uniform Trade Practices Act, Mich. Comp. Laws § 500.2006, when it "failed to pay [his] claim on a timely basis." (*Id.*)

The parties have now filed cross-motions for judgment on the pleadings. (*See* Zedan Mot., ECF No. 14[2]; SGL Mot., ECF No. 18.) The Court held a video hearing on the motions on March 9, 2021. (*See* Notice of Hearing, ECF No. 24.)

### III

### A

Both parties have moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). A Rule 12(c) motion is governed by the same standards applicable to a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Lindsay v. Yates,* 498 F.3d 434, 437 n.5 (6th Cir. 2007) ("[T]he legal standards for adjudicating Rule 12(b)(6) and Rule 12(c) motions are the same"). Rule 12(b)(6) provides for dismissal of a complaint when a plaintiff fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). A claim is facially plausible when a plaintiff pleads factual content that permits a court to reasonably infer that the defendant is liable for the alleged misconduct. *Id.* (citing *Twombly,* 550 U.S. at 556). When

---

[2] Zedan filed two motions for judgment on the pleadings, an initial motion (*see* ECF No. 13) and an amended motion (*see* ECF No. 14.) The Court **TERMINATES AS MOOT** Zedan's initially-filed motion (ECF No. 13).

assessing the sufficiency of a plaintiff's claim, a district court must accept all of a complaint's factual allegations as true. *See Ziegler v. IBP Hog Mkt., Inc.,* 249 F.3d 509, 512 (6th Cir. 2001). "Mere conclusions," however, "are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal,* 556 U.S. at 664. A plaintiff must therefore provide "more than labels and conclusions," or "a formulaic recitation of the elements of a cause of action" to survive a motion to dismiss. *Twombly,* 550 U.S. at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

At the hearing before the Court, counsel for both parties agreed that this action is properly resolved by way of cross-motions for judgment on the pleadings because there is no disagreement as to the material facts set forth in the pleadings and no need for the development of a factual record through discovery.

**B**

Michigan law governs this diversity action brought pursuant to 28 U.S.C. § 1332. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).

Under Michigan law, "insurance policies are subject to the same contract construction principles that apply to any other species of contract." *Rory v. Continental Ins. Co.*, 703 N.W.2d 23, 26 (Mich. 2005). They should be "read as a whole, giving harmonious effect, if possible, to each word and phrase." *Wilkie v.*

5

*Auto-Owners Ins. Co.*, 664 N.W.2d 776, 781 n.11 (Mich. 2003). *See also Stryker Corp v. XL Ins. Am.*, 735 F.3d 349, 355 (6th Cir. 2012) (same; citing *Wilkie*). Terms in an insurance policy "must be given their plain meaning and [a] court cannot create an ambiguity where none exists." *Turek Enterprises, Inc. v. State Farm Mut. Auto. Co.*, 494 F.Supp.3d 492, 498 (E.D. Mich. 2020) (quoting *Heniser v. Frankenmuth Mut. Ins. Co.*, 534 N.W.2d 502, 505 (Mich. 1995)). Ambiguous terms "are construed against its drafter and in favor of coverage." *Auto Club Ins. Ass'n v. DeLaGarza*, 444 N.W.2d 803, 806 (Mich. 1989).

In addition, an insurer "bear[s] the burden of showing that any exclusion to coverage applie[s]." *Turek*, 494 F.Supp.3d at 503. Such "[i]nsurance exclusion clauses are to be construed strictly and narrowly." *RealComp II, Ltd. v. Ace American Ins. Co.*, 46 F.Supp.3d 736, 741 (E.D. Mich. 2014). However, "clear and unambiguous exclusions in insurance policies" should be enforced. *Id. See also Turek*, 494 F.Supp.3d at 499 ("Policy provisions, such as exclusions, are valid as long as [they are] clear, unambiguous and not in contravention of public policy") (internal quotation marks omitted).

## IV

### A

The Renovation Exclusion precludes Zedan's claim for insurance coverage. The Renovation Exclusion provides that "no coverage is available for any loss or

damage directly or indirectly arising out of or relating to any renovation or construction work being performed at or upon the [Property]." (Policy, ECF No. 8-1, PageID.225.) Here, there is no dispute that renovation work caused the fire that damaged the Property. Thus, Zedan's losses arose "directly or indirectly" out of a "renovation," and therefore the Renovation Exclusion excludes his claim from coverage.

## B

Zedan does not dispute that his insurance claim fell within the plain language of the Renovation Exclusion (*see* Zedan Resp. Br., ECF No. 22, PageID.472), but he nonetheless insists that the exclusion does not preclude coverage. He contends that the language of the Policy as a whole reveals that the parties did not intend for the Renovation Exclusion to preclude coverage where, as here, a loss is caused *both* by a Covered Cause of Loss (fire) *and* by renovation work. (*See id.*, PageID.476.)

As support for this argument, Zedan directs the Court to differences between the language of the coverage exclusions in a portion of the Policy titled "Causes of Loss – Basic Form" (the "Basic Form Exclusions"), on one hand, and the language of the Renovation Exclusion, on the other hand. (*See id.*) The Basic Form Exclusions are preceded by what is known as an "anti-concurrent, anti-sequential cause" clause. The clause provides that coverage for "loss or damage [caused by one of the Basic Form Exclusions] is excluded regardless of any other cause or event that contributes

7

concurrently or in any sequence to the loss." (Policy, ECF No. 8-1, PageID.213.) For instance, the clause excludes coverage for a loss caused, in part, by an act of "war" (one of the Basic Form Exclusions) even if the loss was also caused, in part, by a fire (a Covered Cause of Loss). (*Id.*, PageID.214.) In sharp contrast to the Basic Form Exclusions, the Renovation Exclusion is *not* preceded by an "anti-concurrent, anti-sequential cause" clause. (*See id.*, PageID.225.) Zedan says that this difference is significant: "the fact that [SGL] specifically used the highly specific anti-concurrent, anti-sequential language in the preamble of [the Basic Form Exclusions], but omitted it from the [Renovation Exclusion] clearly demonstrates that [SGL] only intended for such qualifying language to apply to [the Basic Form Exclusions]." (Zedan Resp. Br., ECF No. 22, PageID.476-477.) Stated another way, Zedan contends that SGL's "omission of the 'concurrent and sequential' language from [the Renovation Exclusion] suggests it intended [to provide] coverage where [a loss arose from renovation work but where] there was also a 'concurrent and sequential' covered cause of loss," such as a fire. (Zedan Mot., ECF No. 14, PageID.343.)

     This is a serious argument. And it appears consistent with at least one of the basic rules of contract construction applied by Michigan courts. Like Zedan, Michigan courts deem it significant when parties include a material term in one section of a contract and omit it from a second section of the contract. Under those circumstances, Michigan courts hesitate to interpret the second section so as to

8

include the substance of the omitted term. *See, e.g. Holmes v. Holmes*, 760 N.W.2d 300, 313 (Mich. App. 2008) (explaining that parties' inclusion of a term allowing the review of certain financial obligations in one section of a consent judgment and omission of a similar term from a second section of the judgment "supports the conclusion" that the parties did not intend the obligations in the second section to be reviewed and modified).[3] Applying this rule of construction here would appear to support Zedan's argument that the Court should not read the Renovation Exclusion as if it includes an "anti-concurrent, anti-sequential cause" clause.

The problem for Zedan is that this interpretation of the Renovation Exclusion is squarely foreclosed by the Sixth Circuit's published decision in *Iroquois on the Beach, Inc. v. General Star Indemnity Company*, 550 F.3d 585 (6th Cir. 2008). In order to fully understand that decision, one must first have a basic understanding of how Michigan law treats the issue of concurrent causation in the insurance coverage context. Michigan courts apply what is known as a "default rule" under which it is presumed that "a loss is *not* covered when it is concurrently caused by the combination" of a cause that is "covered" under a policy and a second cause that is "excluded" under the policy. *Id.* at 588 (emphasis in original). Thus, under Michigan

---

[3] While the court in *Holmes* was interpreting a consent judgment, it explained that "[j]udgments entered pursuant to the agreement of parties are of the nature of a contract," *Holmes*, 760 N.W.2d at 313, quoting *Gramer v. Gramer*, 523 N.W.2d 861 (Mich. App. 1994), and its analysis referenced in text above appeared in a section of its decision captioned "GOVERNING CONTRACT PRINCIPLES." *Id.* at 310.

9

law, every policy exclusion is presumptively treated as if it includes "anti-concurrent, anti-sequential cause" language even if it does not. *See id.*

Turning back to *Iroquois*, the plaintiff in that case was a hotel on Mackinac Island, Michigan. *See id.* at 586. In October 2005, an architect who had been hired to inspect the hotel discovered that "water was entering the building [] because of the insufficient steel frame that failed to protect the building in windy conditions." *Id*. He discovered water damage that had "occurred gradually over the course of several years." *Id*. The hotel then filed an insurance claim arising out of the damage. The hotel contended that it was entitled to coverage because one of the "Specified Causes of Loss" under its insurance policy was loss from "windstorm[s]." *Iroquois on the Beach, Inc. v. General Star Indem. Co.*, 2007 WL 2984197, at *7 (W.D. Mich. Oct. 12, 2007).

The hotel's insurer denied coverage. The insurer "did not dispute that [the hotel's] loss" was a covered cause of loss under the terms of the policy. *Iroquois*, 550 F.3d at 587. Instead, the insurer asserted that the hotel was not entitled to coverage because its loss fell within exclusion "B.2.f." of the policy. *Iroquois*, 2007 WL 2984197, at *5. That exclusion provided that the insurer would not "pay for loss or damage caused by or resulting from … [the c]ontinuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more." *Iroquois*, 550 F.3d at 587.

10

The hotel countered that exclusion "B.2.f." did not bar coverage of a loss that was caused *both* by water seepage/leakage *and* by a separate covered cause of loss (such as damage from a windstorm). It insisted that exclusion "B.2.f." should not be read as if it included "anti-concurrent, anti-sequential cause" language. As support for this reading of exclusion "B.2.f.," the hotel contrasted the language of that exclusion with the language of a different policy exclusion that *did* contain express "anti-concurrent, anti-sequential cause" language:

> Iroquois argues that exclusion B.2.f. is inapplicable because windstorms, a covered loss under the policy, initiated the sequence of events that resulted in the loss and B.2.f. contains no "anti-concurrent, anti-sequential" clause *as in paragraph of B.1.*[4] Such a clause excludes coverage "regardless of any other cause or event that contributes concurrently or in any sequence to the loss." Iroquois argues that the omission of this clause in B.2.f. indicates that the insurer intended to provide coverage where the loss is caused by wind if it was the first or last step leading to the seepage or leakage of water.

---

[4] Paragraph "B.1." of the policy in *Iroquois* was a general list of exclusions. The paragraph began with the following language: "We will not pay for loss or damages caused directly or indirectly by any of the following. *Such loss or damages is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.*" *Iroquois*, 2007 WL 2984197, at *6 (emphasis added). The italicized language from paragraph "B.1." did not appear in exclusion "B.2.f." *See id.*

11

*Id.* at 587-88 (emphasis and footnote added). (This argument should sound familiar. It employs precisely the same reasoning that Zedan offers in support of his reading of the Renovation Exclusion here.)

The Sixth Circuit rejected the hotel's argument "relating to the lack of an anti-concurrent, anti-sequential clause" in exclusion "B.2.f." *Id.* at 588. It held that exclusion "B.2.f." precluded coverage even though it did not include an "anti-concurrent, anti-sequential cause" clause and even though paragraph "B.1." did include such a clause. *See id.* The court explained that "the absence of an anti-concurrent, anti-sequential clause [in exclusion "B.2.f." did] nothing to alter Michigan's default rule that a loss is not covered when it is caused by a combination of a covered risk and an excluded risk." *Id.* at 588-89. *Iroquois* thus makes clear that under Michigan law, a court should apply Michigan's default rule to a policy exclusion – *i.e.*, it should read the exclusion as if it contains an "anti-concurrent, anti-sequential cause" clause – even if the exclusion does not contain such a clause and even if a different exclusion in the same policy does.[5]

---

[5] The Sixth Circuit acknowledged that the "default rule could presumably be altered by the inclusion of an express concurrent-causation provision." *Iroquois,* 550 F.3d at 588 n.4. But *Iroquois* demonstrates that a court may not find that the parties intended to "alter" Michigan's default rule on the ground that they omitted "anti-concurrent, anti-sequential cause" language from one exclusion and included such language in another exclusion.

12

The Sixth Circuit in *Iroquois* also declined to follow *Simonetti v. Selective Ins. Co.*, 859 A.2d 694 (N.J. Super. 2004), a decision in which a New Jersey court interpreted a policy exclusion in the same way that Zedan asks this Court to construe the Renovation Exclusion. The policy at issue in *Simonetti* included a number of exclusions. Some of those exclusions contained "an anti-sequential and anti-concurrent clause" and some did not. *Id.* at 699-700. The court held that this difference in language "evidence[d]" the insurer's "clear intent[]" that the exclusions that did not include "an anti-sequential and anti-concurrent clause" would *not* bar coverage for losses caused by both a covered cause of loss and a loss that fell within the exclusion. *Id.* This, of course, is the precise line of reasoning advanced by Zedan here. That the Sixth Circuit rejected *Simonetti* – the decision Zedan calls "most directly on point" (Zedan Supp. Br., ECF No. 25, PageID.507) – as inconsistent with Michigan law confirms that the Court may not adopt Zedan's reading of the Renovation Exclusion.

Finally, Zedan argues that *Iroquois* does not control here because "the fundamental and essential rules of contract interpretation were not … even considered" in that case. (Zedan Supp. Br., ECF No. 25, PageID.508.) For instance, Zedan suggests that the Sixth Circuit in *Iroquois* did not "give harmonious meaning to all of the policy language and avoid rendering any language nugatory," and he

13

"request[s]" that this Court do so here. (*Id.*, PageID.508-509.)  But the Sixth Circuit both cited and applied the rule of construction highlighted by Zedan. It said:

> Additional case law supports the view that Michigan does not permit courts to stray from the policy language in this manner. '[C]ourts must ... give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory.' *Klapp v. United Ins. Group Agency, Inc.,* 468 Mich. 459, 663 N.W.2d 447, 453 (2003). Moreover, 'the language of the parties' contract is the best way to determine what the parties intended.' *Id.* at 457.

*Iroquois*, 550 F.3d at 588.  Thus, Zedan may not avoid *Iroquois* on the ground that the Sixth Circuit did not consider the rules of contract construction on which he relies.

The bottom line here is that the published decision in *Iroquois* is fatal to Zedan's proposed interpretation of the Renovation Exclusion.  While Zedan has offered a serious argument as to why the Renovation Exclusion should be interpreted as he suggests, that argument must fail unless and until he persuades the Sixth Circuit to revisit *Iroquois*.[6]

---

[6] SGL offers an additional argument as to why Zedan's argument – which is based upon a comparison of the language in the Renovation Exclusion and the Basic Form Exclusions – must fail.  It says that policy exclusions must be read independently of one another. (*See* SGL Mot., ECF No. 18, PageID.418-419.)   There is admittedly some support in Michigan law for that proposition. *See, e.g., English v. Blue Cross Blue Shield of Michigan*, 688 N.W.2d 523, 537 (Mich. App. 2004) ("Exclusions limit the scope of coverage provided and are to be read with the insuring agreement and independently of every other exclusion"). However, it is not clear that any Michigan court has applied that principle in circumstances like those presented here.

## C

Zedan also argues that the Policy's "control of property" provision precludes SGL from denying insurance coverage here. (*See* Zedan Resp. Br., ECF No. 22, PageID.487-488.) That provision states that "[a]ny act or neglect of any person other than you beyond your direction or control will not affect this insurance." (Policy, ECF No. 8-1, PageID.207.) Zedan says that because the loss here was caused by Leamon, who was not under Zedan's direction or control, any act of Leamon cannot "affect" Zedan's right to insurance coverage. (Zedan Resp. Br., ECF No. 22, PageID.487.) And Zedan insists that it would be "inconsistent" with the "control of property" provision to hold that the Renovation Exclusion bars coverage here. (Zedan Mot., ECF No. 14, PageID.347.)

---

Moreover, in at least one decision, the Michigan Court of Appeals has compared the language of two different policy exclusions to determine whether there was an ambiguity in one of the exclusions, *see Fresard v. Michigan Millers Ins. Co.*, 296 N.W.2d 112 (Mich. App. 1980), and the Michigan Supreme Court then affirmed that decision by an equally-divided vote. *See Fresard v. Michigan Millers Ins. Co.*, 327 N.W.2d 286 (Mich. 1982). It also appears that in at least one circumstance, the Sixth Circuit has compared and contrasted the language of policy exclusions. *See O.L. Matthews, M.D., P.C. v. Harleysville Insurance Co.*, 826 F. App'x 508, 515-16 (6th Cir. 2020) (noting that one exclusion in an insurance policy "does not have an ensuing-loss clause" while another exclusion in the same policy did). For all of these reasons, the Court declines to rule against Zedan on the basis that Michigan law categorically prohibits any comparison of language in policy exclusions. The Court need not, and does not, reach that issue. Instead, for all of the reasons explained above, the Court rules against Zedan because *Iroquois* precludes the precise argument he presents here.

15

But Zedan has not cited any decision in which any court has held that a "control of property" provision like the one in the Policy is inconsistent with, or somehow negates an insurer's ability to enforce, a policy's exclusions. And SGL has cited authorities for the contrary proposition – that a "control of property" provision does not prevent an insurer from enforcing a policy exclusion. *See*, *e.g.*, *Torres Hillsdale Country Cheese, L.L.C. v. Auto-Owners Insurance Company*, 2013 WL 5450284, at *3 (Mich. Ct. App. Oct. 1, 2013) (rejecting as "untenable" plaintiff's argument that an insurance policy's exclusions were "trumped" by the policy's "control of property" provision); *Guideone Mut. Ins. Co. v. Cote Brilliante Presbyterian Church*, 2019 WL 1452929, at ** 2-3 (E.D. Mo. Apr. 2, 2019) (rejecting argument that provision in insurance policy stating that "the act or neglect of any person other than you beyond your direction or control will not affect this insurance" was ambiguous or that the provision precluded insurance company from denying coverage for loss caused by third-party contractor). In light of these authorities identified by SGL, and the absence of authority cited by Zedan, the Court is not persuaded that the "control of property" provision prevents SGL from denying coverage under the Renovation Exclusion.

## V

For all of the reasons stated above, the Renovation Exclusion precludes Zedan's claim for insurance coverage for his fire loss. Accordingly, the Court **GRANTS** SGL's motion for judgment on the pleadings (ECF No. 18) and **DENIES** Zedan's motion (ECF No. 14).

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: March 22, 2021

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 22, 2021, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764